**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |
|---|
| **NAZJAH T. LLOYD,** |
| *Plaintiff,* |
| **v.** |
| **THE CHILDREN'S HOSPITAL OF PHILADELPHIA,** |
| *Defendant.* |

**Case No. 2:19-cv-02775-JDW**

<u>**MEMORANDUM**</u>

After a tough loss, Yogi Berra once told an opponent that "you wouldn't have won if we'd beaten you." After a jury trial, it's not uncommon for the losing side to have a similar thought. The Children's Hospital Of Philadelphia lost a trial to Nazjah Lloyd, but it's convinced that it should have won, so it asks me to hand it a victory. But CHOP's motion suffers three flaws. First, it mischaracterizes my rulings at trial. Second, it misstates the law, particularly as to punitive damages. Third, it views the trial evidence through its own prism, rather than in the light most favorable to Ms. Lloyd. Because the trial record supports the jury's verdict for Ms. Lloyd, I will deny CHOP a new trial. But federal law requires that I reduce the jury's damages award, and I will reduce it more to account for the nature of the case.

I.    **BACKGROUND**

A.    **Facts**

In July 2017, Ms. Lloyd began working as a Sterile Processing Technician at CHOP. Ms. Lloyd worked with approximately seventeen other technicians on the second shift, which operated daily from 3:00 p.m. until 11:00 p.m. Ms. Lloyd reported to the Second Shift Supervisor, Vencina Newsome.

Sterile Processing Technicians at CHOP clean and sterilize equipment used to perform surgery and other procedures at the hospital. While Ms. Lloyd was at CHOP, Ms. Newsome assigned technicians to a weekly schedule of tasks and published the schedule on her office door. The schedule was meant to ensure that technicians weren't assigned to any task more than twice a week. The assignments included tasks such as decontamination (known as "decon"), sterilization, and cart packing. Some tasks were physically taxing and required the technician to lift, push, or pull heavy objects, to stand for a long period of time, or to kneel while working. Ms. Newsome sometimes altered the schedule when technicians called out of work. Ms. Lloyd testified that Ms. Newsome generally did so verbally, rather than publish a new schedule on her door.

Ms. Lloyd believed Ms. Newsome treated the men on her shift better than the women. She complained about that multiple times but didn't see any improvement. She began to take notes regarding her observations. At one point, after she filed an internal complaint, CHOP management investigated her notetaking but not the alleged

discriminatory conduct. At least one CHOP manager told Ms. Lloyd's male coworkers that she had filed a complaint about favorable treatment, which led to harassment and bullying at work. Ms. Lloyd became depressed and quit her job in November of 2018.

### B.     Procedural History

Ms. Lloyd filed a *pro se* Complaint on June 24, 2019. After Ms. Lloyd got a lawyer, she amended her Complaint. She asserted claims for gender discrimination, a gender-based hostile work environment, retaliation, and a retaliatory hostile work environment. After discovery, CHOP moved for summary judgment on the issue of Ms. Lloyd's constructive discharge. The prior judge assigned to this matter, the Honorable C. Darnell Jones II, granted that motion. But Judge Jones also explained that "constructive discharge is not a threshold issue for purposes of her other claims; in other words, her failure to establish a genuine issue for trial on constructive discharge does not necessarily require dismissal of her hostile work environment and retaliation claims." (ECF No. 41 at 3 n.2.)

At the start of trial, CHOP argued that Judge Jones's summary judgment order precluded Ms. Lloyd from pursuing her gender-based hostile work environment claim. I disagreed because Judge Jones's ruling focuses on evidence of constructive discharge, and neither constructive discharge specifically nor an adverse employment action more generally is an element of a hostile work environment claim. A hostile work environment claim can arise from lesser actions that don't amount to an adverse action. That's why

Judge Jones said in his Order that his ruling would not preclude a hostile work environment claim.

The case proceeded to trial. At the close of evidence, I granted CHOP judgment as a matter of law on Ms. Lloyd's gender-based hostile work environment claims because Ms. Lloyd hadn't adduced sufficient evidence of gender discrimination to meet the severe or pervasive standard. The jury returned a verdict for Ms. Lloyd her remaining retaliation claims and awarded Ms. Lloyd $90,000 in compensatory damages and $500,000 in punitive damages. Ms. Lloyd then asked for her attorneys' fees, and CHOP sought a new trial or a directed verdict.

## II.    LEGAL STANDARD

When a "court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). Upon a renewed motion, a court can either allow the judgment on the verdict, order a new trial, or direct judgment as a matter of law. *Id.* at (b)(1)-(3). If a court directs a verdict, it must also decide whether a new trial is warranted. *Id.* at (c).

A court may grant a Rule 50(b) motion "only if, in viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence" to support the jury's verdict. *Warren ex rel. Good v. Reading School Dist.*, 278 F.3d 163, 168 (3d Cir. 2002) (quotations omitted). The court

must deny the motion if a reasonable jury could have reached the verdict upon the evidence in the record. *See Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 433 (3d Cir. 2009). "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). Therefore, the court must not engage in credibility determinations, weighing evidence, and drawing inferences from the facts, and should weigh all evidence favoring the non-movant against only the "uncontradicted and unimpeached" evidence supporting the movant. *Id.* at 150-51.

A Rule 50 motion "may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). After a jury trial, a court may grant a new trial under Rule 59 "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). However, a new trial is granted "only when the great weight of the evidence cuts against the verdict and . . . a miscarriage of justice would result if the verdict were to stand." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) (cleaned up, quotations omitted). An error of law may be grounds for a new trial, but only when the error is so prejudicial that it affects a party's "substantial rights." *See* 11 Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure. § 2805 (3d ed. 2022) (quoting Fed. R. Civ. P. 61). Granting a new trial is discretionary. *Foster v. Nat'l Fuel Gas Co.*, 316 F.3d 424, 429 (3d Cir. 2003).

Similarly, "[t]he use of remittitur clearly falls within the discretion of the" district court. *Evans v. Port Auth. of N.Y. and N.J.*, 273 F.3d 346, 354 (3d Cir. 2001) (citations omitted). The purpose of a motion to alter or amend judgments under Rule 59(e) is "to correct manifest errors of law or fact or to present newly discovered evidence." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citations omitted). Therefore, a Rule 59(e) motion is granted only when there is (1) a change in controlling law, (2) new evidence, or (3) a need to correct a clear error of law or prevent manifest injustice. *Id.*

The Due Process Clause of the Fourteenth Amendment to the Constitution also requires remittitur of punitive damages where the award is "grossly excessive." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568 (1996).  The test for whether a punitive damages award is grossly excessive analyzes the degree of reprehensibility of the defendant's conduct, the ratio of actual harm suffered to the punitive damages award, and the difference between the penalty imposed and those imposed in comparable cases. *Id.* at 575.

## III.    DISCUSSION

### A.    New Trial/Judgment As A Matter Of Law

#### 1.    Admission of evidence of gender discrimination

CHOP contends that I erred when I permitted Ms. Lloyd to present evidence of gender discrimination to the jury. But CHOP has it wrong. CHOP bases its argument on the premise that Judge Jones "dismiss[ed] Plaintiff's gender discrimination claim." (ECF

No. 77-1 at 24.) He didn't. He granted summary judgment on the issue of constructive discharge, meaning the gender-based disparate treatment claim. Judge Jones did not grant summary judgment on Ms. Lloyd's gender-based hostile work environment claim, so that claim remained in the case when the trial started, and Ms. Lloyd was entitled to present evidence to try to satisfy her burden on the issue. She fell short, which is why I granted CHOP's Rule 50 motion on the issue, but it wasn't error to let her try.

CHOP also argues, as it did before trial, that Ms. Lloyd's gender-based hostile work environment claims required an adverse employment action, so Judge Jones's decision about constructive discharge puts an end to the hostile work environment claim, too. That argument is meritless. I rejected it multiple times on the record after providing CHOP opportunities to find and raise caselaw to the contrary. CHOP hasn't provided further support for that position in its brief, so my rationale for rejecting those arguments on the record stands.

### 2. Retaliation

Title VII retaliation claims are subject to *McDonnel Douglas* burden-shifting. *See Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006). If the plaintiff establishes a *prima facie* case of retaliation, then the burden shifts to the defendant to provide a non-retaliatory justification for its actions, after which the plaintiff must show that the justification is pretextual. *See id.* When I view the evidence at trial in the light most

favorable to Ms. Lloyd, the record has enough evidence to support each of these elements.

### a.   *Prima facie* **case**

To make out a *prima facie* case of retaliation, the plaintiff must prove that (1) the plaintiff engaged in activity protected by Title VII, (2) the defendant took an adverse employment action against the plaintiff, and (3) there was a causal connection between the first two steps. *Kengerski v. Harper*, 6 F.4th 531, 536 (3d Cir. 2021). The record has enough evidence to support each of these elements.

### i.   **Protected activity**

Title VII protects activity opposing unlawful discrimination. *See Moore*, 461 F.3d at 341. For Title VII's anti-retaliation provisions to apply, "the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Id*. The employee need not prove that the conduct was actually unlawful, only that it reasonably appeared unlawful. *See Kengerski*, 6 F.4th at 537. Therefore, it doesn't matter if there are legitimate justifications for CHOP's conduct, but whether a reasonable person in Ms. Lloyd's position would believe CHOP's conduct was illegal. *Id*.

The evidence at trial was sufficient for a reasonable juror to conclude that Ms. Lloyd had an objectively reasonable belief, in good faith, that she complained about unlawful gender discrimination. Ms. Lloyd testified that (a) she observed men in her unit taking extra lunch and smoke breaks with impunity and receiving better work assignments than

women, (b) male workers told her that Ms. Newsome adjusted their time clocks when they arrived late to work, and (c) Ms. Newsom spent hours chatting with male employees in her office, but didn't do so with the women. Ms. Newsome also testified, and other evidence confirmed, that she disciplined some men less frequently for tardiness than Ms. Lloyd, and Ms. Lloyd testified that she observed that imbalance. The jury could credit all that testimony and conclude that Ms. Lloyd had an objectively reasonable basis to complain—even if she was proven wrong.

The evidence was also sufficient for a reasonable jury to find that Ms. Lloyd had an objectively reasonable belief that she had complained about retaliation for her earlier complaints. For example, Ms. Lloyd testified that Ms. Newsome made work uncomfortable for her, acted aggressively toward her, made comments about her, refused to speak to her, and scheduled her for more difficult work assignments after she complained about discrimination. She also testified that Ms. Newsome refused to offer her overtime because of her discrimination complaints and that Ms. Newsome indicated to male coworkers that Ms. Lloyd had complained about discrimination. Therefore, there was evidence that Ms. Lloyd had an objectively reasonable, good faith belief that she'd complained about actions that are unlawful under Title VII.

### ii.    Adverse action

For retaliation claims, an adverse employment action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination."

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). However, the action must be material, meaning more than just "petty slights, minor annoyances, and simple lack of good manners." *Id.* at 68. Therefore, courts "examine the challenged conduct from the perspective of a reasonable person in the plaintiff's position, considering all of the circumstances." *Daniels v. School Dist. of Phila.*, 776 F.3d 181, 195-96 (3d Cir. 2015) (quotations omitted). Because context matters, actions that might be immaterial in some circumstances might be material in others. *See id.* at 196.

A reasonable jury could (and did) find that CHOP's actions would have dissuaded an employee in Ms. Lloyd's shoes from complaining about unlawful conduct. Ms. Newsome told male employees that "someone complained" about unfair work assignments while looking directly at Ms. Lloyd. (*See* 11/29/2022 Trial Tr. at 60:2-22.) CHOP did not investigate Ms. Lloyd's discrimination complaint (or at least didn't do so fully). (*See* 12/01/2022 Trial Tr. at 158:1-24, 160:5-9.) CHOP management investigated Ms. Lloyd for keeping track of what she considered to be discriminatory behavior, and it went to a male employee and told him about Ms. Lloyd's complaint, even though that was counter to CHOP's policies. (*See* 12/01/2022 Trial Tr. at 84:5-25.) Ms. Lloyd experienced bullying after her complaints became public, including insults and a freeze-out from her supervisors. Given the circumstances of a physically arduous work environment that required cooperation among coworkers, a jury could reasonably conclude that these actions weren't just petty slights. A reasonable jury could also find the failure to

adequately investigate Ms. Lloyd's complaints, and CHOP subsequently investigating her instead, would dissuade a reasonable person from reporting unlawful conduct, regardless of context.

CHOP's arguments to the contrary are not persuasive. *First*, CHOP analyzes each action separately to decide if it would have dissuaded complaints. But the actions didn't happen in isolation. They all happened at once, so I and the jury have to consider them collectively. *Second*, CHOP does not grapple with how a reasonable juror could have seen the evidence. Instead, it puts its own gloss on the evidence. CHOP complains that Ms. Newsome's treatment of Ms. Lloyd was just a petty slight, which is how CHOP wants to see it. But a juror could see it differently because it was frequent and came from a supervisor. CHOP also dismisses as speculative evidence that CHOP managers disclosed Ms. Lloyd's complaints to her coworkers. The evidence, however, showed that Ms. Lloyd made a confidential complaint and that her coworkers then accused her of being a snitch. That might have been because Ms. Lloyd was keeping tabs on her coworkers, as CHOP claims. But a reasonable juror could have inferred that it was because CHOP told her coworkers about the complaint. *Third*, CHOP dismisses Ms. Lloyd's citations for tardiness as immaterial because they carried no consequence. But CHOP relies on cases in which there were just oral reprimands. *See, e.g., E.E.O.C. v. Wyeth Pharm.*, Case No. 2:03-cv-2967, 2004 WL 503417, at * 2 (E.D. Pa. Mar. 11, 2004). Ms. Lloyd faced more serious consequences, in the form of formal written discipline. While it didn't have an immediate

impact, it went in her permanent record and had the possibility of a long-term impact on her employment. A reasonable juror therefore could have concluded that the conduct would have deterred complaints from a reasonable employee.

### iii. Causal connection

To prove a *prima facie* case of retaliation, a plaintiff needs to raise a "likely inference" that the alleged adverse employment action is causally connected to her protected activity. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 253 (3d Cir. 2017). "A plaintiff may rely on a broad array of evidence to demonstrate the causal link." *Id.* at 260 (cleaned up). Evidence can include inconsistent explanations for the adverse employment action, a pattern of antagonism, temporal proximity, and more. *Id.* Additionally, the record as a whole may prove the inference.

A reasonable jury could believe that Ms. Lloyd met this standard. *First*, the jury could believe she experienced a pattern of antagonism from management soon after she complained. This includes Ms. Newsome telling a male coworker that someone complained while looking directly at Ms. Lloyd, which led to a further pattern of harassment and bullying from her coworkers. It also includes the fact that management investigated her for taking notes on the discrimination that she complained about. *Second*, the jury could conclude that inconsistent testimony regarding how CHOP investigated and documented the complaints raised an inference that her complaint caused management to retaliate. Alternatively, that same inconsistency may raise an

inference that her complaints caused management to ignore the problem altogether. *Third*, inconsistent testimony from CHOP's management about whether it followed its policies for investigating her complaint, and whether management shared her complaints with her coworkers, could raise an inference of causation.

Besides citing the wrong standard for causation at the *prima facie* stage, CHOP's causation argument errs because it considers the formal discipline issued to Ms. Lloyd to be the only relevant adverse employment action. Because that's CHOP's focus, it bases its temporal proximity argument on the date of that discipline. But that's not the only adverse action. Instead, there were several other adverse employment actions that the jury could consider, which it could find constituted a pattern of antagonism. Additionally, the record included inconsistent explanations for several of CHOP's actions, from which the jury could reasonably infer causation.

### b.    CHOP's justification

CHOP met its burden to provide lawful justifications for its actions. CHOP argued that Ms. Lloyd was disciplined for lateness according to its policies, that management investigated Ms. Lloyd's complaints and found there was no discrimination, and that the coworkers who bullied Ms. Lloyd did so due to Ms. Lloyd's note taking and combative demeanor. Therefore, the burden shifted back to Ms. Lloyd to prove these justifications were pretextual.

###### c.   Pretext

To prove pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious retaliatory reason was more likely than not a determinative cause of the employer's action." *Daniels*, 776 F.3d at 198-99 (cleaned up). The plaintiff must do more than show the decision was "wrong or mistaken, but rather demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted [non-retaliatory] reasons." *Id.* at 199 (cleaned up). To determine if she met this burden, courts look to all the evidence, including the same evidence that supported the plaintiff's *prima facie* case. *See Carvalho-Grevious*, 851 F.3d at 262.

Based on the evidence at trial, a reasonable juror could disbelieve CHOP's justifications for its actions. There were inconsistencies in the testimony that CHOP elicited from its witnesses about how CHOP conducted its investigation of Ms. Lloyd's complaints, whether it publicized Ms. Lloyd's complaints, and why it investigated Ms. Lloyd for taking notes about what she saw occurring at work instead of investigating her complaint. CHOP's failure to document its investigation and findings, as well as the possibility that it didn't follow its own procedures if it failed to do so, could also undermine CHOP's

credibility. Based on these inconsistencies and gaps in CHOP's internal records, a reasonable jury could conclude that Ms. Lloyd experienced several actions that would dissuade a reasonable employee from complaining about discrimination, and those actions were not the result of any legitimate, nondiscriminatory reason. Instead, a reasonable jury could find that the only reason for that pattern of antagonism was Ms. Lloyd's complaints. CHOP's only arguments suggest that discrimination was not the real reason for its actions, but it does not grapple with the possibility that a reasonable juror could disbelieve it. That omission dooms its argument.

### 3.   Retaliatory hostile work environment

To find for Ms. Lloyd on her retaliatory hostile work environment claim, the jury had to believe that: (a) Ms. Lloyd suffered intentional discrimination because of her complaint; (b) the discrimination was severe or pervasive;[1] (c) the discrimination detrimentally affected her; (d) it would have detrimentally affected a reasonable person in like circumstances; and (e) there is *respondeat superior* liability. *See Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017). "[S]imple teasing, offhand comments, and isolated

---

[1] Since the Supreme Court's decision in *Burlington Northern*, some courts question whether "sever or pervasive" is still the standard for retaliatory hostile work environment claims. *See Komis v. Sec'y of U.S. Dep't of Lab.*, 918 F.3d 289, 298 (3d Cir. 2019) (discussing the applicability of the "materially adverse" standard to retaliatory hostile work environment claims). Regardless, I instructed the jury they must find the conduct was severe or pervasive. Because the evidence at trial meets that higher standard, whether it's still applicable doesn't change the outcome of this case.

incidents (unless extremely serious)" are not sufficient. *Faragher v. City of Boca Raton*, 524

U.S. 775, 788 (1998) (citations omitted). "The question of whether an environment is

sufficiently hostile or abusive must be judged by looking at all of the circumstances,

including the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance." *Moody v. Atlantic City Bd. of Educ.*, 870

F.3d 206, 215 (3d Cir. 2017) (citations omitted).

It was reasonable for the jury to find for Ms. Lloyd on her retaliatory hostile work

environment claim. At trial, the jury heard testimony from which it could conclude that

management didn't investigate Ms. Lloyd's complaints but investigated her instead. It also

heard testimony that management revealed her complaint to coworkers. There was

testimony that once Ms. Lloyd's coworkers were aware of her complaints, those coworkers

began to bully her and refused to help her at work. The daily bullying was so persistent

that Ms. Lloyd cried before work every day and often couldn't leave her bed. The jury was

free to credit that testimony. And if it did so, it could reasonably conclude that the conduct

occurred because of Ms. Lloyd's complaint, it was pervasive, it affected Ms. Lloyd, and it

would have affected a reasonable person.

CHOP argues that because there was evidence that Ms. Lloyd's conduct (such as

her own notetaking) caused the hostile work environment, she didn't prove that

"retaliatory animus" caused it. But that flips the standard on its head. The jury didn't have

to believe the testimony that Ms. Lloyd's own actions created the hostile work environment. It could believe that management's exposure of her complaints to her coworkers was the only thing that caused the bullying, even if Ms. Lloyd wasn't sure of that herself. There was also sufficient evidence based on the lack of documentation surrounding how CHOP handled Ms. Lloyd's complaints for the jury to question whether CHOP took those complaints seriously. The lack of documentation, coupled with CHOP's contemporaneous investigation into Ms. Lloyd's note taking, was sufficient for the jury to conclude the hostile work environment was in retaliation for Ms. Lloyd's protected activity.

### B.    Damages

CHOP asks me either to vacate or remit both the compensatory and punitive damages awards. I won't adjust the compensatory damages award, but I will remit the punitive damages award.

### 1.    Compensatory damages

Title VII allows compensatory damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). Courts have an "obligation [] to uphold the jury's award if there exists a reasonable basis to do so." *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989). For damages based on emotional distress, the plaintiff must show a "reasonable probability rather than a mere possibility that damages due to emotional distress were in fact incurred." *Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 573 (3d

Cir. 2002). So long as a rational relationship exists between the injury and the award, courts "*may not* vacate or reduce the award" unless it's "so unreasonable as to offend the conscience of the Court." *Motter*, 883 F.2d at 1230 (emphasis in original).

The record supports a $90,000 compensatory damages award. Ms. Lloyd showed a "reasonable probability" that CHOP's retaliatory conduct and hostile work environment caused her emotional distress and mental anguish. Ms. Lloyd testified that, because of CHOP's conduct, she cried in her car every day before and after work, had trouble getting out of bed every day, had anxiety attacks, saw a therapist, took prescription medication for depression, used her paid sick days, and took several weeks of unpaid leave. Both Ms. Lloyd's therapist and primary care physician testified that her work environment contributed to her anxiety attacks and depression, for which they ultimately prescribed medication and recommended she take a leave of absence. It was not unreasonable for the jury to conclude that $90,000 was appropriate to compensate Ms. Lloyd.

CHOP suggests that other factors caused Ms. Lloyd's emotional distress, and there was evidence of those other factors. The jury didn't have to credit that evidence, though. And even if it did credit the evidence of other causes, the jury was free to weigh the various causes, including retaliation at work. Its outcome is not so unreasonable as to shock the conscience.

CHOP also argues that the award, if appropriate, is excessive. In making that assessment, decisions from other courts can offer me "some guidelines." *Gumbs v. Pueblo*

*Int'l, Inc.*, 823 F.2d 768, 773 (3d. Cir. 1987). But I'm not moved by any of these cases because they're distinguishable. For example, CHOP argues that the $20,000 compensatory damages award for mental anguish in *Shesko v. City of Coatesville* suggests the jury's verdict is excessive. *See* 324 F. Supp. 2d 643, 652 (E.D. Pa. 2004). But the plaintiff's injuries in that case were only that she felt sad, and it was difficult for her to go to work. *Id.* There, Judge Joyner found that a $20,000 compensatory damages award, in 2004 dollars and based on those injuries, was reasonable. If anything, that supports the reasonableness of a $90,000 award in 2022 dollars for a plaintiff who testified that she lost several weeks of income, saw a therapist, and took prescription medication to deal with depression due to her mental anguish. Other cases that CHOP cites involved an award of $75,000 in 2006 and $52,250 in 1997. *See Hall v. PA Dept. of* Corrections, No. 02-1255, 2006 WL 2772551, at * 22 (M.D. Pa. Sept. 25, 2006); *Vanentin v. Crozer-Chester Med. Ctr.*, 986 F. Supp. 292, 296-97 (E.D. Pa. 1997). Those cases are older than this case, and the awards in those cases, though different, are not different by orders of magnitude. Therefore, I find the jury's compensatory damages verdict is rationally based, and I will uphold it.

### 2.    Punitive damages

CHOP takes issue with both the jury's decision to award punitive damages and the amount that it awarded. The jury had a basis to award punitive damages, but the award was too high under federal law and the circumstances of the case.

### a.    Appropriateness of punitive damages

A jury can award punitive damages under Title VII if it finds the defendant acted "with malice or with reckless indifference to the [plaintiff's] federally protected rights." 42 U.S.C. §1981a(b). Malice and reckless indifference focus on "the employer's state of mind and require that 'an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law.'" *Gagliardo*, 311 F.3d at 573 (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535-36 (1999)).

Ms. Lloyd presented sufficient evidence at trial for a reasonable jury to conclude that CHOP acted with reckless indifference to her federally protected rights. CHOP knew that it had a duty to investigate complaints of discrimination. It had an official procedure to collect and investigate those complaints. Management failed to document its investigation of Ms. Lloyd's complaints according to its own protocols, which the jury could reasonably take as evidence that CHOP did not properly investigate them, that it was dismissive of them, or that it did not investigate them at all. CHOP's management admitted that it would be against its policies to tell employees that their coworker had filed complaints, and that divulging information about discriminatory complaints could cause legal issues. Yet there was testimony that CHOP management may have, on multiple occasions, let Ms. Lloyd's coworkers know that she filed complaints. A reasonable jury could both credit that testimony and could find that that conduct constituted reckless indifference.

There was also testimony that CHOP's management both knew of and participated in the retaliatory harassment of Ms. Lloyd. For example, there was testimony that CHOP investigated Ms. Lloyd shortly after one of her complaints. There was testimony that Ms. Lloyd made Ms. Newsome and other managers aware of the bullying she experienced after she complained and that Ms. Newsome may have at times participated in that bullying by making comments about her, ignoring her, assigning her more difficult tasks, and indicating to Ms. Lloyd's coworkers that she had complained. Taken as a whole, the evidence was sufficient for the jury to conclude that CHOP acted with indifference to Ms. Lloyd's federally protected right to not experience retaliation or a retaliatory hostile work environment for making Title VII complaints.

Again, much of CHOP's argument to the contrary again consists of its own interpretation of the evidence. For example, CHOP argues that there was "more than ample evidence CHOP acted upon every complaint Plaintiff made." (ECF No. 77-1 at 14.) CHOP's right that there was ample evidence for the jury to reach that conclusion. That's not the test, though, even for punitive damages. The question is whether there was evidence that permitted the jury to reach the opposite conclusion. There was. CHOP also argues that Ms. Lloyd did not prove that CHOP leaked confidential information and that it didn't have to keep her complaint confidential in any event. Again, CHOP misses the point. There was evidence that the jury could credit that indicated CHOP leaked information about Ms. Lloyd's complaint, including Ms. Lloyd's testimony that Ms.

Newsome looked at Ms. Lloyd while telling coworkers that someone complained. And even CHOP's argument about confidentiality falls flat. There was evidence that the jury could credit that CHOP's norm was to keep complaints confidential and that it didn't observe that norm in Ms. Lloyd's case. From that, the jury could reasonably infer malice or at least reckless indifference.

CHOP also argues that it can't be liable for punitive damages because it made good faith efforts to comply with Title VII.  "[I]n the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII." *Kolstad*, 527 U.S. at 545 (quotations omitted).[2] CHOP's argument once again relies on its own version of events and of the testimony, rather than looking at the evidence in the light most favorable to Ms. Lloyd.

John Kanzleiter, who had responsibility for CHOP's investigation of Ms. Lloyd's complaints, acknowledged that he did not draft a summary or prepare an investigative report. He sought to explain that away, and CHOP's motion credits his testimony (*see* ECF No. 77-1 at 17), but the jury didn't have to credit the testimony. Instead, it could

---

[2] The Third Circuit hasn't determined whether the *Kolstad* test is an affirmative defense, but its model instruction treats it as one. *See* 3d Cir. Model Civ. Jury Instructions § 5.4.2, "Punitive Damages." Therefore, I instructed the jury accordingly. *See also Middlebrooks v. Teva Pharms. USA, Inc.*, No. 17-cv-412, 2019 WL 438092, at *15 n.150 (E.D. Pa. Feb. 4, 2019) (citing *Medcalf v. Trustees of Univ. of Pa.*, 71 Fed. Appx. 924, 933 (3d Cir. 20013)).

reasonably have decided that the failure to draft a summary or prepare a report meant that CHOP did not satisfy its burden of proving good faith compliance.

### b.    Amount of punitive damages

When a plaintiff brings claims under similar state and federal laws, and a jury doesn't apportion damages between those claims, "a district court's obligation to uphold lawful jury awards whenever reasonable [] supports the apportionment of damages between state and federal claims." *Gagliardo*, 311 F.3d at 571. Ms. Lloyd brought claims under Title VII and the Pennsylvania Human Relation Act. However, punitive damages are not available under the PHRA. *See Hoy v. Angelone*, 554 Pa. 134, 142 (1998). Therefore, I will apportion the $90,000 compensatory damages award to the PHRA and the $500,000 punitive damages award to the Title VII claim. With that allocation, I can analyze the amount of the punitive damages award.

### i.    Statutory caps

Title VII limits the "[t]he sum of the amount of compensatory damages . . . and the amount of punitive damages" to $300,000 in cases involving employers like CHOP that have more than 500 employees. 42 U.S.C. § 1981a(b)(3)(D). This provision requires me to reduce the punitive damage award to $300,000. Ms. Lloyd argues that Title VII's statutory cap is an affirmative defense that CHOP waived because it didn't plead it. For support, she cites a case from the District Of Maine relying on First Circuit precedent that defines statutory caps as affirmative defenses. *See Bell v. O'Reilly Auto Enters., LLC*, No. 1:16-cv-

00501-JDL, 2022 WL 782784 at *1 (D. Me. Mar. 15, 2022). But there is no such precedent in the Third Circuit, and I don't find it persuasive. The plain text of the statute makes the cap mandatory in all cases, regardless of whether it was pled. *See* 42 U.S.C. §1981a(b)(3). Additionally, an affirmative defense is an "assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true." *See Defense*, *Black's Law Dictionary* (11th ed. 2019). Statutory damages caps can't defeat claims, so they aren't affirmative defenses.

### ii.        Constitutional limits

"The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive" punitive damages awards. *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). To determine if an award is "grossly excessive," courts analyze three "guideposts": (1) the degree of the reprehensibility of the relevant misconduct; (2) the disparity between the actual or potential harm suffered and the award; and (3) the difference between this award and civil penalties authorized or imposed in comparable cases. *Id.* at 418 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

Degree Of Reprehensibility. "The most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendants conduct." *Id.* at 419 (cleaned up). The reprehensibility analysis considers whether: (1) the harm was physical as opposed to economic; (2) the "conduct evinced an indifference to or reckless disregard of the health or safety of others;" (3) the target of the conduct was financially

vulnerable; (4) the conduct was repeated or an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 363 (3d Cir. 2015) (citations omitted).

Ms. Lloyd's injuries were both physical and economic. Because of CHOP's actions, Ms. Lloyd took multiple weeks of unpaid leave. She also suffered anxiety attacks and was diagnosed with clinical depression, for which she took prescribed medication. CHOP argues that those injuries are not physical, but it's wrong. Mental health problems are real, and they constitute real injuries, as CHOP of all institutions should understand. The cases CHOP cites deal with injuries of embarrassment or humiliation, not clinically-diagnosed mental health problems. *Cf. Jurinko v. Medical Protective Co.*, 305 Fed. Appx. 13, 26 (3d Cir. 2008) (finding embarrassment is not a physical injury); *Dixon-Rollins v. Experian Info. Sols., Inc.*, 753 F. Supp. 2d 452, 464 (E.D. Pa. 2010) ("Embarrassment and humiliation are not the types of physical injuries contemplated under the reprehensibility analysis. ").

There's also some evidence that the retaliation resulted from malice or trickery.  It certainly wasn't accidental. The jury apparently concluded, with at least some support, that Ms. Newsome targeted Ms. Lloyd for her conduct and for complaining about Ms. Newsome specifically. There was also evidence for the jury to credit that Mr. Kanzleiter failed to investigate Ms. Lloyd's complaints and arguably even covered up that fact by telling her that he was investigating. All of which could evidence malice.

The other factors do not demonstrate particularly reprehensible conduct. Ms. Lloyd has not shown that CHOP acted with indifference to the safety of others. She has not shown that CHOP's conduct jeopardized any patient or employee, or anyone other than Ms. Lloyd herself.  She also has not shown that she was particularly financially vulnerable or that CHOP targeted her for that reason. There's no evidence that CHOP has done anything like this to another employee before or since, and the fact that CHOP's illegal conduct constituted a series of actions towards Ms. Lloyd is afforded "less force" under this factor. *See Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*, 399 F.3d 244, 232 (3d Cir. 2005).

<u>Disparity between harm and award</u>. There's no bright line rule about what level of disparity between compensatory and punitive damages is unconstitutional. However, "a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Campbell*, 538 U.S. at 425. After reducing the punitive damages award to comply with the statutory cap, the ratio of punitive to compensatory awards is 3.33. That is "not the type of gross disparity between compensatory and punitive damages that renders a punitive award suspect by itself." *Brand Mktg.*, 801 F.3d at 366.

CHOP argues that the ratio should be lower because Ms. Lloyd's compensatory damages are substantial. When compensatory damages are substantial "a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Campbell*, 538 U.S. at 425. Whether the award is substantial depends on the facts and circumstances of the defendant's conduct and harm to the plaintiff. *See*

*id.* For support that this award is substantial, CHOP points to a single case in which Judge Goldberg characterized a compensatory damages award of $117,710 dollars as substantial and issued a punitive damages award at a 1:1 ratio. *See Perez v. Lloyd Indus., Inc.*, No. 16-cv-1079, 2019 WL 3765657 at *11 (E.D. Pa. Aug. 8, 2019). But CHOP mischaracterizes that opinion. Judge Goldberg wasn't determining the constitutionality of a punitive damages award, he was awarding damages in the first instance, following a bench trial. The cited portion of that opinion was only his explanation for how he decided to determine punitive damages. In contrast, the Third Circuit has upheld 5:1 damages ratios even when compensatory damages exceed $1 million. *See Brand Mktg.*, 801 F.3d at 366. A $90,000 award of compensatory damages is not so substantial in this case that a 3.33:1 damage ratio is unconstitutional.

Comparable civil penalties. The comparable civil penalties guidepost compares the punitive damages award to civil penalties for similar misconduct. *Gore*, 517 U.S. at 584. "This guidepost reflects a deference to legislative judgments concerning the appropriate sanctions for the conduct at issue . . . and provides notice of possible sanctions to potential violators." *Willow*, 399 F.3d at 237 (citations omitted). When there are no comparable civil penalties to the underlying cause of action, courts find this prong unhelpful and don't consider it. *Brand Mktg.*, 801 F.3d at 363.

CHOP has not met its burden to identify a comparable civil penalty, let alone show that this award is in excess of it. Instead, CHOP says it's unaware of any similar punitive

damages award. That's not what this guidepost examines, and it has nothing to do with legislative judgments regarding how a defendant might be sanctioned for retaliatory conduct. Therefore, I find this guidepost unhelpful, and need not consider it. *Id.*

Based on these guideposts, I find that the punitive damages award is constitutional.

### iii.        Remittitur

"The remittitur is well established as a device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 715 (3d Cir. 2010). Unlike a constitutionally reduced verdict, a remittitur based on the weight of the evidence substitutes the court's judgment for the jury's. *Id.* Therefore, when a court remits an award based on the weight of the evidence, it must offer the plaintiff a new trial. *See Hetzel v Prince William Cnty., Va.*, 524 U.S. 208, 211 (1998) (per curium). As I noted above, the punitive damages award in this case is constitutional, but it is certainly not the strongest case. Indeed, my analysis for the degree-of-reprehensibility illustrates why that is so. Many of the factors do not demonstrate reprehensibility. And even for the two that do, there is evidence that cuts both ways.

Given my analysis, I conclude that the jury's punitive damages award was excessive. CHOP acted wrongfully, and the jury had a basis to conclude that it acted maliciously or with reckless indifference. But this is not a case with egregious facts. It is certainly not one that supports an award of punitive damages that is more than 3x the jury's (arguably generous) award of emotional distress damages. In my estimation, an award of punitive

damages on a 1:1 basis with the award of compensatory damages makes sense in this case. Therefore, I will remit the punitive damages award to $90,000. I will give Ms. Lloyd the opportunity to accept that award or to have a new trial.

## IV.   CONCLUSION

CHOP had an opportunity to fully present its defense to a jury, and the jury decided that CHOP had violated the law and acted with malice or reckless indifference to Ms. Lloyd's federally protected rights. Based on the evidence presented at trial, it was not unreasonable for the jury to do so, although it was a bit too generous with its punitive damages award. Therefore, I will remit the punitive damages award to $90,000 and give Ms. Lloyd the opportunity to accept that award or to have a new trial. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

April 13, 2023